Good morning, Your Honors. May I please record, my name is Ji Xuanli and I represent the Dictioner. Could you speak a little louder? Yes, Your Honor. Thank you. This case involves two issues. The first one relates to the one-year bar. The BIA found that my Dictioner failed to meet his burden of proof, demonstrating that he filed his assignment application within one year of his arrival in the United States. It is clear from the record that the BIA did not make an explicit adverse credibility determination against the petitioner. Under the real ID, if no adverse credibility determination was explicitly made, then the applicant must have a rebuttable presumption of credibility on appeal. Counsel, how is it that we have jurisdiction over this question? Yes, because this is just a question of law, because there's no issue relating, because the facts are not in dispute. The facts are in dispute. You say that he filed on time and the BIA said you didn't. That seems to be a dispute of fact. That's not a dispute of law. I'm saying, but the BIA, the BIA is finding that my client's application was time-barred. The BIA didn't say that my client testified incredibly as to the underlying facts. The BIA. It didn't have to. It had a government-issued certificate from Clark County, Nevada. Well, Your Honor, yeah, I'm getting there, Your Honor. Actually, if you look at the temporary health card itself, it doesn't say that the card was issued on May 25, 2004. Actually, the card, if you look at it closely, Your Honor, the card has a different date. But that just makes it a disputed finding of fact, doesn't it? Because a question of law necessarily involves a question of facts. But it would be interesting, counsel, to figure out how Clark County would be able to have put that date on there when that would be six months before your client says he arrived in the United States. Exactly, Your Honor. If you look at the top, it also bears another date. It says November 25, 2004. So it only says that the exam date was May 25, 2004. Right. It also has a stamp date on it. It has a stamp date of May 25th. Yeah. That shows that the exam date. Right. That's six months before your client arrived in the United States, according to his testimony. Exactly, Your Honor. But it doesn't show that the actual card was issued on that particular date. Because if you look at the card... Do you have any credible explanations to how Clark County, Nevada, would issue a card to a Chinese citizen who was yet to arrive in the United States? I disagree with your characterization. This card was issued on May 25, 2004. Because if you look at the top, it also has November 25, 2004 on the card. That still wouldn't correspond with the time that your client said he came to the United States. Yes, sir. My client, he said he came to the United States in prior... December. In December, right? December, 2004, if I remember correctly. Okay. All of this, counsel, the colloquy that you and I are having shows that there's a dispute over the facts. And we have been deprived of jurisdiction by Congress over disputes of fact related to the timing of asylum applications under 1158A, I think it's A3. So how do we get jurisdiction to decide this question? I do understand your position, Your Honor. But the BIA, as BIA put in BIA's own words in its decision, that the BIA found that McClellan failed to meet his burden of proof. So the issue before the court is what way that the court should attach to the temporary health card. Because, first of all, the foundation of the card, the way that this card made its way to the record was very suspicious. Because my client clearly testified that he has never seen this card. He never went through the full handler's training session. That's circular, because if his testimony is not credible, the fact that he denies it is not helpful. Exactly. But the BIA did not find McClellan not credible. So the BIA actually was contradicting itself by saying that McClellan did not arrive on the particular date that he said he had arrived. And the law is clear, Your Honor, in this jurisdiction that the petitioner's credible testimony without further cooperation is sufficient to satisfy the burden of proof showing a timely finding of a silent application. So therefore, my first argument is that the petitioner has met his burden through his credible testimony that he did file his silent application within the one year of his arrival in the United States. Now, the one year bar issue aside, the second issue is that whether or not the petitioner has met his burden of proof showing that he's eligible for the relief he was seeking. And the BIA, again, the BIA did not find McClellan not to be credible. So therefore, Petitioner McClellan is presumed to be credible, and he can sustain his burden of proof showing his eligibility for the reliefs that he was seeking without cooperation, if his testimony is credible and is specific and is persuasive and it refers to the specific facts of persecution. And in this case, the BIA found that McClellan has failed to meet his burden of proof showing that he's eligible for withholding removal. The sole base for the BIA's such finding is that he did not present reasonably obtainable cooperative evidence. By reasonably obtainable cooperation, the BIA had in mind three things. One is a letter from a family member. As McClellan testified that his parents are illiterate, and so they cannot even write. And so the BIA, the IGA, and then saying that because he has a sister who is illiterate, so she can write. But McClellan explained that the sister actually lived away from his family home. So the sister was not in a position to tell the court. Counsel, what is it that you would like us to do? At the end of the day, do you want us to send this back to the BIA and tell them that they have to give your client withholding of removal? Or do you want a second opportunity to get corroboration? What is it that you want? Exactly, Your Honor, because, as I said, there are three things that the BIA was requiring. McClellan explained that there are not reasonably obtainable. And as to another. Okay, so if we were to send this back to the BIA, they can't send it back to the IJ because your client can't get his parents or his sister to file new corroborating evidence. That's right, Your Honor. Okay, so that would be useless for us to send it back to the BIA with instructions to send it back to the IJ. Yes. McClellan will hope that this case can be remanded to the BIA with the instruction that McClellan will be given an opportunity to corroborate. Oh, you do want an opportunity to corroborate? Yes, Your Honor. Okay. Yes, because especially, Your Honor, the IJ pointed out that the respondent petitioner has a fiancé. Actually, it's the mother of his U.S. citizen child who can potentially testify. She can testify as to his practice of Christianity in the United States, but she can't testify as to anything that happened in China. Exactly, Your Honor. Is there any corroboration he can obtain from China? Maybe with the help of the sister, she can somehow get a letter to the court. But, again, the petitioner explained that the sister might be afraid of sending a letter out of China. Actually, that fear was supported by the record because the U.S. State Department report shows that the Chinese authorities often open and censor. But if she can't provide any corroboration for the events that took place in China, then the BIA is left just trying to figure out whether your client has provided sufficient information, and they've already said that they concluded that they didn't provide sufficient evidence. That's right, Your Honor. Did you want to save the last few seconds for rebuttal? Yes, Your Honor. Thank you, Your Honor. May it please the Court. Vineet Chima for the respondent, the Attorney General. The Board and immigration judge properly found petitioner failed to meet his burden of proof to establish that he filed his asylum application within one year of entering the United States. His only challenge to that determination is based on a factual issue, the date that he entered, and thus the Court lacks jurisdiction over that finding. I'd like to ask you a question about the withholding issue and the lack of corroboration. We do have a case that even under the new statute requires that if corroboration is going to be sought, or the lack of corroboration could be a factor, that there has to be sufficient notice given to the petitioner or I guess respondent below that such corroboration is going to be required, and without it the person might not be believed. As I see this record, there may be some problems with the sufficiency of that advance notice, and I wonder if you would comment on that. Yes, Your Honor. Three responses, actually. First, that issue is both unexhausted and waived. Petitioner didn't raise it to the Board. He never claimed that he didn't have sufficient notice to the Board, and he didn't raise the issue in his opening briefs. Thus, the issue isn't properly before this Court. Second, I believe you're referring to Wren. Yes. And to the extent that Wren discusses whether any specific process is required for notice, for corroborating evidence, that discussion is dicta in Wren because Wren ---- Well, maybe, maybe not. The case that said so has been withdrawn. And is currently ---- Correct. I would just like to point out that in Wren, the issue was also not briefed or brought before the Board there. In Oshodi, which is currently en banc, the Board there discussed corroboration in the context of an adverse credibility finding, which is not what we have here. There's two separate provisions in the statute for when corroboration can be required. But the due process question would apply to both contexts, it would seem to me. If, you know, if due process requires that somebody know that they have to corroborate their own testimony, because technically one's testimony, if believed, is sufficient, so there's a ---- Wren says, well, if you're not going to be allowed to rely on your own testimony, you need to know that in time to do something about it. So why wouldn't that concept apply regardless of the context? Well, there is a question of how much notice and what kind of notice is required. And the Real ID makes it clear. The amendments that the Real ID made to the statute were to indicate to applicants that even if you're credible, you still have a burden of proof. Well, you're arguing with Wren now, but I guess the question is, right now, it's a binding precedent on this panel. It's the only binding precedent because Ashodi has been withdrawn. So just as a factual matter in this record, was there sufficient notice given that corroboration would be required, individually noticed to him? It depends what type of notice. In Wren, the immigration ---- Well, what was he told here? Let's not get too theoretical. What was he told ahead of time that he needed to get or else? The statute requires that ---- That's not what I'm asking you. Was he told by the immigration judge, I will need to see X, Y, and Z if you can get it? He wasn't told exactly which elements of evidence that one would need to provide. Was he told to get anything? He was asked why he did not provide any evidence. Right, but that's after the fact. That's like ---- It was during the proceedings, and Petitioner failed to provide an explanation for why it wasn't reasonably available, and today he seems unclear as to whether it was reasonably available or not. And that's his burden to show that it wasn't. I have a question about the BIA decision. It's page 2 of that decision. It's bait-stamped page 4, so it's a little bit unclear. But it follows up on Judge Graber's question, I think. The first sentence of the first full paragraph says, turning next to the issue of withholding of removal, we find that the respondent failed to meet his burden of proof, comma, even if he testified credibly. And my question for you is, it seems to me that this sentence can be read two ways. It can be read, even if he had testified credibly, the implication being that he did not, then we find that he failed to meet his burden of proof. But it can also be read a different way. It can also be read, assuming he testified credibly, comma, then we find that he failed to meet his burden of proof. One of those alternatives implicates possibly Wren, and one of them doesn't. So my question for you is, why shouldn't I decide that this sentence is ambiguous and decide that we need to remand just to get clarification about what the BIA meant? I believe that we read this sentence as saying the second reading that you offered. And it's because the immigration judge didn't make an overall credibility finding only as to his date of entry. So to be clear, forgive me, but what I think you're saying is you read this to mean that the BIA assumed he was credible. That's right. So this implicates Wren, in your view. No, it does not implicate. Well, it implicates Wren, but not of Schody. Right. And Wren is the controlling president. But the aspect of it that is implicated is dicta. Well, that's your view. That's an open question, right? Absolutely. Okay, but you've answered my question about how you read this sentence. The government thinks that the BIA assumed he was credible. Assumed he was credible. That's right. In the pages that are cited there after the sentence that Judge Christen referred to, that's pages 5 to 10 of the IJ's opinion. Page 8, the IJ goes through the question of the subjective basis, and says Respondent did not suffer past persecution in China based upon what he described. The BIA may have affirmed that finding in that sentence, but everything else in the next two paragraphs of the BIA's opinion really goes to other things. The BIA never really says what the IJ said. So what are we supposed to do? Can we look through the BIA's opinion to the IJ opinion, or are we to take the BIA opinion at face value? And let me just add one more thing while you're thinking about that. Part of the reason that I'm concerned here that this looks a little sloppy on the part of the BIA, is that footnote 1 says he didn't exhaust Kat. Kat is not before us. And the last paragraph says, boy, he sure loses on Kat. And you kind of wonder what happened here. It looks like they cut and paste this opinion from other things. So it's a little sloppy. I understand you have to defend it, but it's a little sloppy. I understand the court's concerns, but the issue of Kat is not before the court. Petitioner hasn't raised it. Got it. It's just sloppy work on the part of the BIA, which now leads me to my question. Was the BIA sufficiently careful here in adopting the IJ's finding that even if everything Chen said was absolutely true, that he didn't have an objective basis for withholding? Can you get that out of the BIA's opinion? I can get that out of the IJ's opinion, I think, at page 8. I don't know how to get that out of the BIA's opinion. The government does not believe that the board affirmed that aspect of the immigration judge's opinion, that the harm alleged did not rise to pass persecution. You think it was not affirmed? Correct. It appears that the board affirmed the immigration judge's opinion solely on two aspects, the pre-termission of the asylum based on lack of entering within a year and the lack of corroborating evidence. Okay. And the board, the issue of whether there was notice is both unexhausted and waived. It was never raised before the board. It was not raised in petitioner's opening briefs. The section of WREN that refers to whether notice is required in the government's position is dicta because it was not before the court in WREN and it was not briefed there either. Subject to any further questions that the court has. I think we don't have any at the moment. Thank you. You have about half, less than half a minute. I just want to point out one thing. I think the immigration judge did implicitly found that the respondent petitioner to be credible because on page 8 of the IJS decision is that the court finds that the petitioner's experience may have a subjective basis for the fear of returning to China. So by saying that the petitioner has a subjective fear, subject to the reasonable fear of returning to his home country, the IJS implicitly found that the petitioner to be credible because under the court's Well, I think the IJS can assume that without conceding it, but he did find that the IJS did find that your client did not have an objective fear, an objective basis. But under this court's jurisdiction, the petitioner can only show a subjective fear of persecution based upon credible testimony. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted. We appreciate the arguments of both counsel.
judges: Graber, Bybee, Christen